H. B. SISEMORE, d/b/a Sisemore Surveying Service, and Bond Marble and Tile Company, Plaintiffs in Error,

v.

A. R. VOELKLE and Nellie Bell Voelkle, Defendants in Error.

No. 37142.

Supreme Court of Oklahoma.

May 28, 1957.

Rehearing Denied July 2, 1957.

LeRoy Blackstock, William B. Jones and Robert N. Wilde, Tulsa, for plaintiff in error, H. B. Sisemore.

Sanders & McElroy, Tulsa, for plaintiff in error, Bond Marble & Tile Co.

Charles M. Christensen, Milton W. Hardy, Tulsa, for defendants in error.

PER CURIAM.

This is an appeal by two lien claimants under the mechanic's and materialman's lien statute of this state, 42 O.S.1951 § 161 et seq., from a judgment entered on the suit of A. R. Voelkle and Nellie Bell Voelkle foreclosing a mortgage given by Tulsa Acreage Inc., as a prior lien on certain real property and improvements situated in Tulsa County.

The basic factual situation out of which the issues of the case arise may be stated briefly as follows: The Voelkles, who will be referred to hereafter as plaintiffs, entered a contract with Tulsa Acreage Inc., under date of December 19, 1953, for the sale of a part of a farm owned by plaintiffs, the pertinent provisions of which, stated in substance, were that plaintiffs contracted to sell to Tulsa Acreage Inc., 56½ acres of land; the purchase price of $1,000 per acre was to be paid on the plan of $1,000 on closing the transaction and $3,500 each three months thereafter until the full price was paid; an executed copy of the contract, together with a warranty deed, a mortgage and a check for $1,000 were to be placed in escrow under the usual provisions thereof; it was stated to be understood that Tulsa Acreage was purchasing the land for the purpose of dividing it for sale in building lots and that it would be necessary that a plat drawn by Sisemore Surveying Service (one of the petitioners in error) be approved by a Planning Board and also that Health Department's approval be secured; Tulsa Acreage agreed to use its best efforts to secure the required approvals and if not provided by February 1, 1957, the purchase contract was to be terminated.

On February 1, 1954, it was discovered that the mortgage in escrow had not been executed on the part of Tulsa Acreage Inc., and upon completion of this step, February 2, 1954, the instruments in escrow were exchanged during the noon hour and the mortgage was recorded at 1:53 p. m. that day.

The lien claims of H. B. Sisemore, d/b/a Sisemore Surveying Service, hereinafter referred to as Sisemore, and Bond Marble & Tile Co., plaintiffs in error, both of whom were defendants in the District Court, arise from contracts made with Tulsa Acreage. Certain pertinent findings of fact in relation to the claims of Sisemore and other lien claimants were entered by the trial court. Briefly, they were that Sisemore had entered oral negotiations with the president of Tulsa Acreage Inc., during September, 1953, to prepare plats and maps and to do other work in connection with subdividing plaintiffs' land, and on December 30, 1953, after plaintiffs and Tulsa Acreage entered the purchase contract, made a written contract with Tulsa Acreage to perform services for Tulsa Acreage in the subdivision, to which contract plaintiffs were not parties; Sisemore went upon the land performing the services for Tulsa Acreage, the date the last of the work was done, and materials furnished, being January 15, 1954, for which lien claim was filed on April 20, 1954; the trial court further found that the attorney for plaintiffs had advised the president of the Tulsa Acreage not to enter plaintiffs' land and not to place any improvements or do any work thereon until Tulsa Acreage was given possession under the purchase contract; plaintiffs had

a tenant on the premises and were in possession until about February 10, 1954, at which time furniture and farm machinery were removed; Mr. Voelkle was on the lands at times and saw Sisemore and other lien claimants performing work thereon, but the evidence in this connection was not sufficient to establish consent on plaintiffs' part to the work by Tulsa Acreage which it had employed Sisemore and other lien claimants to do; no specific findings were made as to the details of the mechanic's and materialman's lien claim of Bond Marble & Tile Co., and others; the claims of Sisemore and all other mechanic's and materialman's lien claims were held to be inferior and subject to the mortgage lien of plaintiffs. Only Sisemore and Bond Marble & Tile Co., appeal from the judgment foreclosing plaintiffs' mortgage as a first and prior lien. Their lien claims were fixed by the court in the principal sums of $7,366.80 and $218.18 respectively.

No challenge is made as to the right of plaintiffs to foreclosure of the purchase money mortgage on an unpaid balance of $55,500. There is also no contest over the amounts claimed by the various lien claimants, all of whom were, with Tulsa Acreage, made defendants in plaintiffs' action.

Bond Marble & Tile Co. in support of its lien relies upon an oral contract with Tulsa Acreage Inc., of January 20, 1954, in connection with work done on an old house on plaintiffs' land, whereby it was to lay a new tile floor in the kitchen. It does not seem to be disputed that this work was begun on February 1st and finished at noon on February 2, 1954. Bond Marble & Tile Co. filed its lien claim on May 26, 1954.

The finding of facts referred to are amply supported by the evidence. From the standpoint of the situation as above outlined we are called upon in this appeal to determine whether or not the court erred in holding the mortgage prior and superior to the mechanic's and materialman's liens.

At the outset it is manifest that the contract upon which each of the plaintiffs in error rely in support of their lien claims was made with Tulsa Acreage before it procured

title under the executory contract for sale. While there is a conflict of evidence on the point, the trial court found that the plaintiff was in possession of the property until February 10, 1954, several days beyond the time in which these lien claimants performed labor and furnished materials and that during this period Tulsa Acreage was forbidden to occupy the premises for the purpose of performing any work thereon or furnishing any materials until delivery of possession under the purchase contract. In this connection the trial court found that plaintiff had not consented to the performing of the labor or the furnishing of materials. We think the most significant matter of determination to support the conclusion of the trial court lies in whether or not there was any contract between plaintiff and the lien claimants, and from our examination of the record we find the trial court amply supported in the finding that there was not.

Such being the factual situation, it remains to apply the principles governing the rights of the parties. We had occasion to point out in Pirtle v. Brown, 141 Okl. 227, 284 P. 898, and the holding has since been repeatedly stated, that in order to obtain a lien under the mechanic's and materialman's lien statute, the laborer or materialman must have a contract with the owner. And while we further held in that case that by "owner" is meant any one who has either a legal or an equitable interest in the property, where such interest is asserted under a contract for sale, the lien is upon the equitable interest of the person in possession. In the cases where a lien upon the interest of a purchaser under an executory contract for sale has been recognized it has been upon the basis of possession under a contract of purchase, Pirtle v. Brown, supra; Long-Bell Lumber Co. v. Prowant, 114 Okl. 35, 243 P. 165; Thomas v. Soper Lumber Co., 69 Okl. 197, 171 P. 736. Under this restriction as to possession it would appear that under the facts of the case at bar, Tulsa Acreage not being in possession of the property at the time the contracts for

labor and material were made, nor while such were performed or furnished, a serious question arises as to whether there was actually any contract with an "owner" within the meaning of the lien statute, and certainly there was not such as to affect the interest of the plaintiff in the property. In the Pirtle case we held that where the purchaser under an executory contract for sale was in possession, the lien of the laborer and materialman was "only upon such buildings and improvements so constructed separate from the real estate." And that where, as in that case, the improvements made by the lien claimants were not separate from the improvements already on the land, that although a lien would attach to the vendee interest such was subject to the interest of the vendor. While mechanics and materialmen may acquire a lien by contract with a vendee in possession under an executory contract of sale in the absence of a contract with the vendor, such lien is limited to new improvements placed upon the property, and the lien does not affect the interest of the vendor in the real estate and prior existing improvements. Pirtle v. Brown, supra; Home Building & Loan Ass'n v. White, 141 Okl. 240, 284 P. 889; Braden Co. v. Lancaster Lumber Company, 170 Okl. 30, 38 P.2d 575, 10 A.L.R. 230; Cahill-Swift Mfg. Co. v. Sayer, 72 Okl. 88, 178 P. 671.

While the record of this case indicates an actual knowledge on the part of both appellant lien claimants of the arrangements between plaintiffs and Tulsa Acreage for the sale of the property, both were nevertheless charged with constructive notice of plaintiffs' ownership and that the party, with whom they were contracting to furnish labor and material, was not the owner of the fee. Having such notice they were chargeable with knowledge of all facts which they might have ascertained by the exercise of reasonable diligence, as by inquiry of the plaintiff as to the status of the property, Cahill-Swift Mfg. Co. v. Sayer, supra.

In Thomas v. Soper Lumber Co. supra [69 Okl. 197, 171 P. 737], we quoted with approval from a Kansas case stating, "In actions to foreclose mechanics' liens for work done and for material furnished, under a contract with one who has an executory contract for the purchase of a city lot and is in possession thereof, the lien of the mechanic or materialman must be measured by the extent of the equity of the purchaser under the executory contract." Measuring the rights of the lien claimants under the rules hereinabove stated it must be concluded that what ever lien accrued to plaintiffs in error was limited to the interest of Tulsa Acreage which could in no wise extend, under the facts of this case to the interest of plaintiffs in the property to the exclusion of their rights under the executory contract of sale. The mortgage lien of plaintiffs for the purchase price of the property was impressed upon the property simultaneously with the issuance of the deed through the escrow, and the title passed to the vendee burdened with the mortgage lien. Balfour v. Parkinson, C.C., 84 F. 855, was quoted by this court to this effect in Midland Savings & Loan Co. v. Carpenter, 137 Okl. 204, 279 P. 310.

The lien of the mechanics and materialmen never having extended to the interest of plaintiffs and enforceable only as against the interest of Tulsa Acreage, and that entity never having received title to the property clear of the purchase price claim of plaintiffs as vendors, we find nothing to suggest in equity or by legal provision that the mechanics' and materialmen's lien enforceable only against the interest of the one with whom they contracted and upon whom they relied for payment, should be imposed in a position of priority to the mortgage lien. Plaintiffs' action in deeding the property and reserving a lien for the purchase price was not such a change of relationship of the parties as to grant to the lien claimants any greater rights as against plaintiffs with whom they had not contracted than existed before and accordingly their lien claims were subordinate and inferior to the interest of plaintiffs.

Affirmed.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner Crawford and approved by Commissioner Nease, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.